MaddeN, Judge,
delivered the opinion of the court:
Our Finding No. 3 in this case is, in part, as follows:
3. By direction of the President under authority contained in Public Resolution No. 96, 76th Congress, approved August 27, 1940, the plaintiff was ordered to active duty effective December 2,1940. This order provided in part as follows:
“On that date [December 2, 1940] he [plaintiff] will proceed without delay from his home to Fort Devens, Máss.j reporting in person upon arrival to the Commanding Officer for extended active duty with Company £B’, 84th QM Battalion. * * *
“If not sooner relieved, this reserve officer will return to his home from such place as he may be on duty, in timé to arrive thereat on December 1, 1941, on which date he will revert to inactive status.”
Public Resolution No. 96, referred to in the Finding, appears in 54 Stat. 858. It provided in pertinent part as follows:
During the period ending June 30, 1942, * * * the President be, and is hereby, authorized from time to time to order into the active military service of the United *710 States for a period of twelve consecutive months each, any or all members and units of any or all reserve components of the Army of the United States * * * with or without their consent, to such extent and in such manner as he may deem necessary for the strengthening of the national defense: * * *.
In our former consideration of the case we assumed that by some valid order or direction the active duty periods of reserve officers had been extended, so that the plaintiff’s active duty period would not have, but for the matter of his resignation, terminated on December 1,1941. We so assumed because the parties made no mention, in briefs and arguments, of this obviously important point in the case.
We have now made an express inquiry of the parties as to this point, and it appears that the plaintiff’s active duty period would have terminated on December 1, 1941, unless he had been affirmatively ordered to further active duty. ■ In the circumstances, and considering the attitude which the plaintiff’s superior officers had toward him, we have no reason to presume that he would have been so ordered.
The plaintiff’s suit for active duty pay is only for the period from June 24,1943, to October 15,1945, during which he served in the Army as a private, having been inducted under the draft. This was not, of course, a recall to active duty under his commission as a Eeserve Officer, and did not entitle him to the pay of an officer. Since the plaintiff’s suit does not cover the period from November 11,1941, when the plaintiff’s active duty under his commission was purportedly terminated, and December 1, 1941, when his active duty would have terminated under his orders, and. since, because of that termination, he was not entitled to active duty pay after the latter date, the plaintiff is not entitled to recover.
Our former decision is reconsidered and modified, and the plaintiff’s petition is dismissed.
It is so ordered.
Whitaker, Judge; LittletoN, Judge; and Jones, Chief Judge, concur.
*711 FINDINGS OF FACT
The court, on January.5, 1954, having considered the evidence, the report of Commissioner Marion T. Bennett, and the briefs and argument of counsel, made findings of fact as follows:
1. The plaintiff is a citizen of the United States. His legal residence is Boston, Massachusetts, and his local residence is Washington, D. C.
2. On March 14, 1931, the plaintiff accepted an appointment as a second lieutenant, Quartermaster Reserve, in the Officers Reserve Corps. This commission was terminated upon the plaintiff’s appointment and qualification on October 26,1935, as a first lieutenant in the Officers Reserve Corps for a term of five years. On October 26, 1940, the plaintiff was reappointed for a period of five years as a first lieutenant, and the certificate of his new commission provided in part as follows:
* * * And he [plaintiff] is to observe and follow such orders and directions, from time to time, as he shall receive from me, or the future President of the Unitéd States of America, or the General or other Superior Officers set over him, according to the rules and discipline of War.
This commission evidences an appointment in the Army of the United States, under the provisions of Section 37, National Defense Act, as amended, and is to continue in force for. a., period- of five years from the date above specified [October 26, 1940], and during the pleasure of the President of the United States, for the time being.
Between March 14,1931, and December 1940, the plaintiff served the following periods on active duty: July 17, 1932 to July 30,1932; August 5,1934 to August 18,1934; July 19, 1936 to August 1,1936; July 11,1937 to July 24,1937; July 7, 1940 to July 20, 1940.
3. By direction of the President under authority contained in Public Resolution No. 96,76th Congress, approved August -27, 1940, the plaintiff was ordered to active duty effective December 2, 1940. This order provided in part as follows:
*712 On that date [December 2, 1940] he [plaintiff] will Sroceed without delay from1 his home to Fort Devens, [ass., reporting in person upon arrival to the Commanding Officer for extended'activé duty with Company “B”, 84th QM Battalion.-
If not sooner-relieved, -this reserve officer will return to his home from such place as he may be on duty, in time to arrive thereat on December 1, 1941, on which date he will revert to inactive status.
The plaintiff served with Company “B”, 84th Quartermaster Battalion, under- Lieutenant Knight, its Commanding Officer, until July 9,.1941, when he was transferred to Company “C”, 84th Battalion. Lieutenant Knight had requested that the plaintiff be-transferred out of his command. Upon this transfer, the plaintiff, as ranking officer, was made Commanding Officer of Company “C”. On August 29,1941, he was relieved of that command and transferred to Company “C”, 22nd Quartermaster Regiment.
4. Company “C” of the 22nd Quartermaster Regiment was attached to the 84th Quartermaster Battalion for administration. Both units were' part of the Sixth Army Corps, which, in the summer of 1941, was stationed at Fort Devens, Massachusetts, in the First Corps Area. The Commanding Officer of the 84th Quartermaster Battalion was Major Lewis E. W. Lepper. The Battalion Adjutant was Second Lieutenant Arnott K. Vanderburgh and the Commanding Officer of Company “C”, 22nd Quartermaster Regiment, was Captain Stanley S. Merrell.
5. .Company “C” of the 22nd Quartermaster Regiment was a truck company whose enlisted personnel were colored troops. The section of Company “C” under the command of the plaintiff, a platoon lieutenant, went to a maneuver area, under orders, the latter part of September 1941, in advance of the company. He had under his command about 40 men, which constituted approximately 40 percent of the company’s complement, and about 18 or 20 trucks which transported some of its equipment. -The plaintiff arrived at the maneuver area about September 19, 1941, and Captain Merrell with the rest of the company arrived on October 2,-1941.
*713 • 6. On the day before the plairitiff left Fort Devens for the maneuver area, he was instructed to be ready' to .move out. with his advance section the following morning at seven a. m. Captain Merrell thought the men might not get off on time, so shortly after six a. m. he went to the sompany area to check. Upon finding no activity in the area, Captain Merrell had his first sergeant organize the convoy, consisting of 18 or 20 trucks, and sent someone to locate the plaintiff. The plaintiff arrived about an hour later when the convoy was almost ready to move out. .
7. When Captain Merrell arrived at the maneuver area on October 2, 1941, with the' balance of Company “C,” he first moved his trucks into the bivouac area, where the advance section of his company was located, and then went to the headquarters of the 84th Quartermaster Battalion to report and meet the other officers. Wlien he reported, Colonel John Holt, Corps Quartermaster, Lieutenant Colonel R. W. Whitman, executive officer, and Major Lepper were present. Colonel Whitman brought up the question of plaintiff’s performance of his duties and wanted to know why the advance section had been sent in charge of the plaintiff. Captain Merrell advised him that the plaintiff was the only officer available. Colonel Whitman then commented on the difficulty he had with the plaintiff in getting trucks to designated places on time, on the way the plaintiff maintained his bivouac area, on unsatisfactory discipline among his men, and on other instances of poor-performance of his duties. Colonel Whitman said that the situation regarding the plaintiff had reached a climax, because of - delinquencies in his operations as an officer and that a resignation would have to be secured from the plaintiff for his own good, otherwise the situation demanded that he be- reclassified. All three officers were agreed on the procedure Captain Merrell should take and he was ordered to get plaintiff’s-resignation or have him reclassified. Under Army regulations a recommendation for reclassification could be oral or written.
. ..The plaintiff’s superior officers, in good faith, considered that plaintiff was so inefficient and his performance so unsatisfactory as to justify or require the institution of reclassi- *714 ficátion proceedings unless he. resigned. The plaintiff was an honest, patriotic, and honorable officer.
8. At eight o’clock on the morning of October 3,1941, following- his talk with the other officers, Captain Merrell saw and talked with the plaintiff. He told him about the conference he had with the .three officers the day before and advised the plaintiff of the order that he would have to resign or reclassification proceedings would be started against him. He also told him of the difficulties which Colonel Holt and Colonel Whitman had mentioned during the conference, and of the difficulties he personally had with the plaintiff in the matter of the performance of his duties.
9. After advising Captain Merrell he thought he should resign, the plaintiff personally typed out the following unqualified resignation, dated October 3, 1941, on a single sheet of letter-size paper, using the top half of the page and making several copies:
1. I hereby tender my resignation as a First Lieutenant in the Officers Reserve Corps, and request that I be relieved from duty as a Commissioned Officer with the Army of the United States.
Below the resignation the plaintiff typed a first endorsement for the signature of Captain Merrell, Commander of Company “C”, as follows: “Approved”. Immediately below the first endorsement he typed a second one for the signature of Major Lepper, Commander of the 84th Quartermaster Battalion, as follows: “Forwarded”. There is no evidence that the plaintiff was authorized or directed to type these endorsements for the signatures of Captain Merrell or Major Lepper.
Defendant’s Exhibit No. 1 is the carbon copy of the resignation which the plaintiff kept for his files. He removed this copy from the typewriter before he typed the first and second endorsements on the original and other copies. There is no copy of the lower half of the page on which these two original endorsements appeared, since they were torn off and destroyed and new endorsements substituted therefor, as hereinafter set forth.
10. When the plaintiff - returned with his signed resignation, Captain Merrell signed the first endorsement “Ap *715 proved”. Thereupon the plaintiff delivered it to battalion headquarters. On October 6, 1941, Captain Merrell was advised by the battalion adjutant that the first endorsement which he had signed was incorrect. The captain had no previous experience with the resignation of officers and did not know the requirements of the regulations when he talked to the plaintiff on October 3,1941. The two previous endorsements were torn off and a new first endorsement, typed out and signed by Captain Merrell, was pasted on. It was dated October 6, 1941, but was made on October 9, and read as follows:
This officer has been notified that he has been recommended for reclassification. This resignation is voluntary and unconditional.
At the same time, the following new second endorsement dated October 6, 1941, was prepared in the office of the Battalion Adjutant for the signature of the Battalion Commander, Major Lepper, who signed it. This endorsement stated:
1. Approved.
2. This officer was notified that he would be recommended for reclassification.
3. Resignation is entirely voluntary on the part of the officer concerned.
4. Officer has completed (10 months) and (5/30) months’ service on extended active duty.
5. Officer is neither responsible nor accountable for public property or funds.
6. Home address: 432 Blue Hill Avenue, Roxbury, Massachusetts.
7. Officer has 16 days accrued leave.
8. Officer has passed final type physical examination.
11. On October 4, 1941, the plaintiff orally indicated to Major Lepper and Captain Merrell that he was going to withdraw his resignation. On October 7, 1941, the plaintiff was ordered to take a final-type physical examination the following day. This is the type of physical examination taken upon admission to the Armed Forces or upon termination of one’s services in the Armed Forces. The plaintiff took this physical examination, as ordered, at Fort Bragg.
12. On October 9, 1941, the plaintiff submitted the follow *716 ing withdrawal of his resignation to the Adjutant of the 84th Quartermaster Battalion and mailed a signed duplicate copy to The Adjutant General, Washington, D. C., with a covering letter of transmittal. On that day the plaintiff was senior officer on duty at the bivouac of Company “C”. The withdrawal read as follows:
1. The undersigned hereby withdraws his letter of resignation and request for relief from active duty' submitted on October 3,1941.
13. On October 22,1941, the First Corps Area issued Special Order No. 248. Paragraph 35 provided in part as follows:
35. FIRST LIEUTENANT ISADORE APPELL, 0-283039, QMC now on extended active duty with Company “C”, 22nd Quartermaster Regiment (Trk), Norman, North Carolina * * * is relieved from further active duty in time to enable him to arrive at his home, 490 Blue Hill Avenue, Boxbury, Mass., by midnight, November 11, 1941, at which time he will revert to inactive status. •
On October 25, 1941, Special Order No. 41 was issued by the 84th Quartermaster Battalion Headquarters granting the plaintiff 16 days’ leave, effective that day. The First Corps Area had ordered that the plaintiff be put on leave because his resignation was in lieu of reclassification.
Subsequent to receipt of this information, the plaintiff sent the following undated telegram to the First Corps Area:
■ UNDERSIGNED THIS DAT RECEIVED S. O. 41, ' 84TH QM BATTALION GRANTING HIM SIXTEEN DATS LEAVE BEGINNING OCTOBER TWENTT FIVE.
THIS DAT INFORMED OF RADIOGRAM HEADQUARTERS FIRST CORPS AREA BASED ON RESIGNATION OF UNDERSIGNED DATED OCTOBER THIRD, 1941.
THIS RESIGNATION WITHDRAWN OCTOBER FOURTH AND WITHDRAWAL CONFIRMED IN WRITING OCTOBER NINTH.
. RESIGNATION WAS NOT INTENDED AS RESIGNATION UNDER AR 6 05-230, IS NOT VOLUNTART AND NOT NOW DESIRED.
REQUEST THAT ORDER GRANTING LEAVE BE CANCELLED AND ANT ORDERS BASED ON RESIGNATION OF OCTOBER THREE RESCINDED.
PLEASE ADVISE IF FURTHER WITHDRAWAL OF RESIGNATION NECESSART.
*717 On October 30,1941, the plaintiff requested that the order granting him leave for 16 days be revoked because he had not taken advantage of it. On November 3, 1941, Special Order No. 46 was issued by the 84th Quartermaster Battalion Headquarters granting the plaintiff 6 days’ leave instead of 16.
14. On October 29,1941, The Adjutant General purported to accept plaintiff’s resignation as of November 12, 1941, in a communication to the plaintiff as follows:
1. Your resignation as First Lieutenant, Quartermaster Corps Reserve, Army of the United States, contained in your letter dated October 3, 1941, Norman, North Carolina, is hereby accepted, by direction of the President, to take effect November 12, 1941, under honorable conditions.
2. Kindly acknowledge receipt of this notice on the inclosed A. G. O. Form 701, supplying signature, place and date in the spaces provided therefor.
15. On November 10, 1941, the plaintiff sent a telegram to The Adjutant General in Washington, D. C., requesting “reconsideration of acceptance of my resignation dated October 3,1941.” In this telegram he claimed that his “resignation was submitted under pressure and was not voluntary.” The plaintiff was notified by The Adjutant General that his telegram had, been endorsed to the proper command station for appropriate action. The plaintiff then received the following communication dated November 25, 1941, from the Assistant Adjutant General:
The resignation of Lieutenant Isadore Appell was investigated by the Inspector General, VI Army Corps, who found that the officer concerned, when notified that he was to be reclassified, voluntarily submitted his resignation and that such resignation was in no way due to pressure except that which resulted from notice of reclassification.
16. Army regulation 605-230 on reclassification, was originally issued on January 22, 1941. Prior to issuance of this regulation the reclassification of commissioned officers was not governed by regulation, bulletin, or circular of the Army. Regulation 605-230, as issued on January 22, 1941, did not contain any provision for resignations in lieu of reclassifi *718 cation. On June 7,1941, the regulation was revised so as to include the following:
14. Resignations. — Any officer of any component recommended for reclassification will be permitted to submit his resignation under the provisions set forth in AB, 605-275 for officers of the Begular Army. Forwarding indorsements will clearly indicate that such action is voluntary on the part of the officer; that he has been recommended for reclassification; and that reassignment is not recommended. If the resignation is submitted while under investigation for misconduct the forwarding indorsement will so state.
On August 25, 1941, the above-quoted provision was changed and renumbered to read in part as follows:
12. Resignations. — a. Any officer of any reserve component who has been recommended for reclassification,, or who has been notified either orally or in writing that he is going to be recommended for reclassification, will be permitted to submit his resignation under the provisions set forth in AB 605-275 for officers of the Begu-lar Army. The letter of resignation and the first indorsement will clearly indicate that such action is voluntary on the part of the officer. The first indorsement will also clearly indicate that the officer has been notified that he will be recommended for reclassification.
# # Jfc ‡ *
d. The officers resigning under the provisions of this paragraph are not entitled to a certificate of service.
On October 9, 1941, the above provisions were further amended by letter of The Adjutant General, subsequently embodied in Circular 225 of October 24, 1941, as follows:
12. a. Any officer of any Beserve component who has been recommended for reclassification, or who has been notified either orally or in writing that he is going to be recommended for reclassification, will be permitted to submit his resignation under the provisions set forth in AB 605-275 for officers of the Begular Army. The letter of resignation and the first indorsement will clearly indicate that such action is voluntary on the part of the officer. The first indorsement will also clearly indicate that the officer has been notified that he will be recommended for reclassification. Where misconduct or undesirable habits or traits of character are involved, the nature of such will be stated and the officer will be in *719 formed that the War Department will record his separation as -under other than honorable conditions.
*****
(d) (1) An officer resigning under the provisions of this paragraph as a result of misconduct or undesirable habits or traits of character is considered as being separated from the service under conditions other than honorable and is not entitled to a certificate of service.
An officer resigning under the provisions of this paragraph who has displayed attributes of character and devotion to duty which characterize his service as honest and faithful, or who is subject to reclassification solely because of lack of technical military proficiency, is considered as being separated under honorable conditions and is entitled to a certificate of service.
17. On October 31, 1941, The Adjutant General notified dhe plaintiff in writing of the foregoing amendment to the regulations. The plaintiff requested a certificate of service and, as a result, one showing honorable service was issued to the plaintiff in January 1942.
18. The last period for which the plaintiff could be rated for efficiency, before his resignation became effective, was the period between August 30,1941, and November 11, 1941, An efficiency report covering this period was made by Captain Merrell on December 23, 1941, after the plaintiff had been separated from the Army. The plaintiff was given an efficiency rating of “Satisfactory.” Under remarks, Captain Merrell stated, “In comparing this officer with all officers of his grade and component known to me I would place him in the lower third. He is acceptable in his present grade.”
This efficiency report shows that the plaintiff was in the lowest bracket in which he could be reported without being unsatisfactory. It is the custom of the Army, when an officer is being separated without prejudice, to give him the lowest rating possible without placing him in the “Unsatisfactory” classification. Since the plaintiff resigned in lieu of reclassification, it was normal Army procedure to give him an efficinecy rating that would not prejudice him. An efficiency rating of “Satisfactory”, in the lower third of other officers of his grade and component, is not a recommendation that the officer be retained in the service, and is not an indica *720 tion that- Ms manner of performance may not, in fact, be unsatisfactory. The statement that the plaintiff was “acceptable in his present grade” was not a recommendation for promotion or for retention in the service. Such an efficiency report is not inconsistent with the fact that plaintiff’s performance was unsatisfactory and that he was going to be reclassified.
19. On October 3, 1941, when the plaintiff submitted Ms resignation, and on October 9, 1941, when he submitted a written revocation of the resignation, War Department Regulation 605-275 of September 25,1928, contained the following provisions:
c. A mere offer to resign or to tender resignation is revocable at any time before acceptance. An exception to this rule arises in the case of resignations to which conditions or qualifications are attached, such as “for the good of the service,” in which instances the privilege of withdrawing a proffered resignation may be denied by the authority competent to accept it. Alter acceptance and before effect has been given to the same by notice, an offer cannot be withdrawn or materially modified solely by the person concerned; the consent of the appointing power is necessary.
. d. The acceptance of a resignation is an Executive Act which may be exercised by the President through any proper officer selected by him as by a military commander in the field in time of war.
On November 9, 1944, this regulation was revised so as to contain the following provisions:
2. Unqualified resignation. — a. Any officer of the Army in whatever duty status may tender his resignation whenever he considers such action appropriate. The resignation will be tendered in letter form, will be unconditional, will contain a complete statement of the reasons for which submitted, and will have appended thereto available documentary evidence tending to substantiate any of the given reasons.
b. The tender of an unconditional resignation may be withdrawn at any time before acceptance. After acceptance and before effect has been given to the same by notice to the officer concerned, as provided by these regulations, a resignation cannot be withdrawn or materially modified without the consent of the War Department.
*721 g. An unconditional resignation, if accepted by the War Department, will be accepted under honorable conditions. The officer will be furnished a certificate of service and will be granted accrued leave, when practicable, as provided in Alt 605-115.
3. Eesignation in lieu of reclassification. — a. An officer who has been recommended for reclassification under the provisions of Alt 605-230 may tender his resignation at any time prior to final action by the War Department on the reclassification proceedings.
* * * * *
e. A resignation tendered in lieu of reclassification may be withdrawn only with the consent of the War Department. Normally such consent will not be given.
. 20. The evidence does not establish any administrative practice or custom of the service in conflict with the regulations quoted in these findings.
21. The plaintiff’s active duty Under his commission was terminated November 11,1941. On June 10,1943, the plaintiff was inducted into the Army as a private and placed on duty on June 24, 1943. He served in the Army from that date until October 15, 1945, when he was honorably discharged.
22. On June 12,1942, the plaintiff wrote to The Adjutant General, Washington, D. C., seeking clarification of his status, objecting to the acceptance of his resignation and requesting an opportunity to render military service. The plaintiff submitted a request on May 19,1943, that his official record and status be amended. These requests - were not granted.
23. On November 11, 1943, the plaintiff filed a nonwaiver of officer’s pay and allowance, reading as follows: .,
I am accepting all payments together with additional allotments for dependents without waiving any rights or denying any claim I have for pay and allowances as a commissioned officer in the third pay grade, plus 20% additional for four periods of longevity dating from 14 March 1931, inasmuch as I claim my commission dated 26 October. 1940 has never been terminated and I am legally serving in such status since 24. June 1943,
On April 6,1945, the plaintiff requested permission to serve in a grade commensurate with his civilian and military edu *722 cation without waiving claim to the commission issued on October 26,1940. This was not permitted.
24. On May 17, 1946, after his discharge, the plaintiff requested a review of his case. When this was denied the plaintiff requested a hearing and action by a Board in accordance with Section 207 of the Legislative Reorganization Act of 1946. Thereafter, the plaintiff filed application for correction, which was denied without hearing on March 80, 1948, “on the ground of insufficient basis for review and inability to grant the relief.” The plaintiff has actively pursued all administrative remedies and exhausted the same.
25. The plaintiff here claims the difference between the compensation and allowances he received as a private between June 24,1943, (the date of his induction) and October 15, 1945, (the date of his discharge) and the amount he would have received as a first lieutenant, subject to computation by the General Accounting Office.